UNITED STATES of America

v.

PREMISES KNOWN AS 2930 GREEN-LEAF STREET, ALLENTOWN, PA., a Parcel of Real Property and All Improvements Thereon and All Appurtenances Thereto, Lying In Lehigh County, Pa., and Any Proceeds from the Sale Thereof.

Civ. A. No. 93–4732.

United States District Court,
E.D. Pennsylvania.

March 25, 1996.

Taylor Aspinwall, Assistant U.S. Attorney, Sonia C. Jaipaul, U.S. Attorney's Office, Philadelphia, PA, for U.S.

Michael D. Gelety, Ft. Lauderdale, FL, for Francis Lancon.

H.W. Skene, Philadelphia, PA, for International Fidelity Insurance Company.

Quintes D. Taglioli, Allentown, PA, for Doretta Lancon.

Doretta Lancon, pro se.

## MEMORANDUM

CAHN, Chief Judge.

The United States ("Government") brought a civil forfeiture action pursuant to 21 U.S.C. § 881(a)(7) (1994) against real property located at 2930 Greenleaf Street in Allentown, Pennsylvania ("the property"). Doretta Lancon ("Claimant") asserts an ownership interest in the property and contests the forfeiture on the grounds that she is an innocent owner. Currently before the court is the Government's Motion for Summary Judgment on this claim. Jurisdiction is based on 28 U.S.C. § 1331 (1994). For the reasons stated below, the Government's motion is granted.

## I. FACTS AND PROCEDURAL HISTORY

■ The following facts are not in dispute. On September 1, 1993, the Government commenced a civil forfeiture action against the property. The Government alleged that the property was used by Claimant's former husband, Francis Lancon, in the illegal distribution of a controlled substance during 1990 and 1991, in violation of 21 U.S.C. § 841 (1994), and was therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7).[1] A title search conducted by the Government on September 2, 1993 revealed that the title was in the name of Francis Lancon. This search also disclosed that there was a judgment of $9,164.50 entered on June 26, 1992 in favor of

---

1. The procedure for seizing property pursuant to 21 U.S.C. § 881 is set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims. 21 U.S.C. § 881(b). Supplemental Rule C(6) provides the procedure for claimants contesting the forfeiture. In a civil forfeiture action the government has the burden of proving that there is probable cause to believe that "the property was used to further the trafficking of illegal narcotics." *United States v. Parcel of Real Property Known as 6109 Grubb Road, Millcreek Township, Erie County, Pa.,* 886 F.2d 618, 621 (3d Cir.1989) (citation omitted). "Once the government establishes probable cause the burden of proof shifts to the [claimant] to show that the property was not to be used for this purpose." *United States v. $55,518.05 in United States Currency,* 728 F.2d 192, 196 (3d Cir.1984). The property of innocent owners, that is, owners without "knowledge, consent or willful blindness" of the illicit use of their property, is not subject to forfeiture. 21 U.S.C. 881(a)(7).

Claimant. The Government filed a lis pendens which was recorded on September 3, 1993 in the records of the Lehigh County Recorder of Deeds and the Lehigh County Prothonotary. On September 8, 1993 the warrant of arrest was served on the property. Notice of the Government's intent to forfeit the property was published in the Allentown Morning Call on September 15, 22, and 29, 1993.

The Government sent Francis Lancon a written notice of its intent to forfeit the property. Asserting an ownership interest in the property, Francis Lancon filed a verified claim and answer to the complaint on September 13, 1993. On November 23, 1993, Francis Lancon executed a deed purportedly conveying his interest to Claimant for one dollar.

In March and April 1994, Claimant contacted the United States Marshal's Office for the Eastern District of Pennsylvania to request a key to the property and to request that the Government pay some municipal tax and service bills due on the property. In response, the Government sent a letter on April 22, 1994 to Claimant advising her of the civil forfeiture action against the property and suggesting that she obtain counsel.

On July 13, 1994, Claimant's counsel sent a letter to the United States Attorney's Office for the Eastern District of Pennsylvania stating that she represented Claimant. In response, on July 18, 1994, the Government sent Claimant's counsel a copy of the lis pendens and of the public notices published in the Allentown Morning Call. On July 15, 1994, Claimant filed two verified claims wherein she claimed to be the owner of the property and also a lienholder. Claimant never filed an answer to the complaint.

On March 13, 1995, this court entered an order forfeiting the property to the Government in accordance with the signed Stipulation of Settlement and Consent Judgment between Francis Lancon and the Government. The Government sent a copy of that stipulation to Claimant's counsel.

On August 10, 1995, Claimant filed a pro se Motion for Return of Seized Property Pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. Claimant alleges that she is the owner of the property because she obtained the deed to the property in a child support settlement in November of 1993. Claimant further asserts that Francis Lancon orally conveyed the property to her in 1989.

At the September 7, 1995 hearing[2] on the motion for summary judgment, the Government did not dispute Claimant's entitlement to payment of her $9,164.00 judgment lien on the property. The Government agreed that the proceeds of the sale of the property would go to the payment of this lien and the statutory interest accruing therefrom. Upon being informed by the Government that the property was under an agreement of sale, this court entered an order on September 21, 1995 permitting the sale of the property but stating that the balance of the proceeds, after payment of Claimant's lien and other costs, would be held in escrow as a substitute for the property pending the disposition of Claimant's claim.

## II. DISCUSSION

The Government argues that its Motion for Summary Judgment should be granted on three grounds: (1) Claimant has failed to timely file a claim and answer as required by Supplemental Rule C(6); (2) the Government has established that there was probable cause to believe that the property was subject to forfeiture; and (3) Claimant does not have any defensible ownership interest in the property. (Gov't's Mem.Supp.Mot.Summ.J. at 5, 13, 15.) This court finds that Claimant has no standing to contest this forfeiture action because of her failure to conform to the procedural requirements of Supplemental Rule C(6) and her lack of ownership interest in the property. Therefore, it is unnecessary to address the Government's probable cause argument.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

**2.** References to the transcript of this hearing are designated as N.T. 9/7/95 at [page].

the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

### A. Standing Requirements

■■■ A claimant must satisfy both statutory and constitutional standing requirements. *United States v. Premises Known as 717 South Woodward St., Allentown, Pa.*, 2 F.3d 529, 535 n. 3 (3d Cir.1993) (citation omitted). Statutory standing requires a claimant to comply with the procedures set forth by Supplemental Rule C(6). *United States v. Contents of Accounts Nos. 3034504504 & 144–07143 at Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 971 F.2d 974, 984 (3d Cir.1992), *cert. denied*, 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993); *see also U.S. v. Approximately 2,538.85 Shares of Stock Certificates of the Ponce Leones Baseball Club, Inc.*, 988 F.2d 1281, 1284 (1st Cir.1993) ("If no claim is properly filed [pursuant to Rule C(6) ], a putative claimant lacks standing to contest forfeiture of the property.") (citations omitted); *United States v. A Single Story Double Wide Trailer*, 727 F.Supp. 149, 152 (D.Del.1989) ("Only by filing a verified claim, in accordance with C(6), can a claimant demonstrate that he has a sufficient interest in the seized item to satisfy standing requirements."); *United States v. $288,914 in United States Currency*, 722 F.Supp. 267, 270 (E.D.La.1989) ("In order to have standing to challenge a forfeiture, a claimant must strictly comply with the pleading requirements of Supplemental Rule C(6).") (citation omitted). In order to attain standing under Article III to the Constitution, a claimant must "show an interest in the property sufficient to create a 'case or con-

troversy.' " *Contents of Accounts*, 971 F.2d at 984.

### B. Statutory Standing Requirements

■■■ · As previously noted, the seizure of property under the civil forfeiture statute generally must conform to procedure provided by the Supplemental Rules for Certain Admiralty and Maritime Claims. The procedure for claimants is set forth in Supplemental Rule C(6):

> The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.

The purpose of the time limit established by Rule C(6) is " 'to force claimants to come forward as soon as possible after forfeiture proceedings have begun and to prevent false claims.' " *Approximately 2,538.85 Shares of Stock*, 988 F.2d at 1285 (citations omitted).

■■■ In the instant case, it is undisputed that Claimant failed to file her claim within ten days after the execution of process and that Claimant never filed an answer. Process has been executed when "(1) a properly issued warrant for arrest *in rem* has been properly executed, i.e., served upon the *res;* and, (2) the requisite notice has been given to potential claimants." *Id.* at 1286. Claimant has not challenged the Government's assertion that the warrant was properly executed on September 8, 1993, (Gov't's Mem.Supp. Mot.Summ.J. at 7),[3] but only that she was never served with a notice of seizure. (Claimant's Resp.Mot.Summ.J. at 3.) Supplemental Rule C(4) requires only publication as opposed to personal service of process.

---

**3.** The Government sets forth the following undisputed facts to support this assertion:

> [P]rocess was executed on September 8, 1993, when the Marshal seized and videotaped the property, posted a copy of the complaint and warrant for arrest in rem in an open and

visible manner on the property, served the tenant occupying the property with a copy of said documents and entered into an occupancy agreement with the tenant.

(Gov't's Mem.Supp.Mot.Summ.J. at 7).

*United States v. $184,505.01 in United States Currency,* 72 F.3d 1160, 1163 (3d Cir.1995). Notice was given by publication in the Allentown Morning Call on September 15, 22, and 29, 1993. (Gov't's Mem.Supp.Mot.Summ.J. at 3.) However, "for due process purposes, publication alone is not sufficient when the government can reasonably ascertain the names and addresses of interested parties." *Id.* at 1163 (citing *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)). Personal notice was sent to Francis Lancon, who was at the time the only record owner of the property. (Gov't's Mem.Supp.Mot.Summ.J. at 7.) At the time process was executed, the Government had no notice of Claimant's purported ownership interest[4] but had notice only of Claimant's interest as a lienholder, an interest insufficient to confer standing to assert a claim. *United States v. Premises Known as 2171–73 Bennett Rd., Phila., Pa.,* Civ.A.No. 91–4896, 1991 WL 236893, at *1 (E.D.Pa. Oct. 31, 1991) ("A judgment creditor has only a right to take advantage of certain state procedures to execute, but those rights do not grant the petitioner a specific interest in the property."). Therefore, this court finds that publication was adequate notice to Claimant.

Claimant, however, did not file any claims until July 15, 1994, approximately ten months from the date of publication in the Allentown Morning Call. (Gov't's Mem.Supp.Mot. Summ.J. at 7–8.) Even if this court were to determine that Claimant received no adequate notice until the Government's letter of April 22, 1994 informing Claimant of the civil forfeiture action against the property and suggesting that she obtain counsel, *id.* at 3, Claimant's claim filed almost three months from this date is still untimely.

■ " 'It is not an abuse of discretion for the district court to require strict compliance with Supplemental Rule C(6).' " *United States v. Lot 65 Pine Meadow, an Addition to Barling, Sebastian County, Ark., with all Appurtenances & Grounds,* 976 F.2d 1155, 1157 (8th Cir.1992) (citation omitted); *United*

*States v. One Dairy Farm,* 918 F.2d 310, 312 (1st Cir.1990) (stating that "numerous . . . courts . . . have required strict adherence to Rule C(6)" and citing cases); *United States v. Beechcraft Queen Airplane,* 789 F.2d 627, 630 (8th Cir.1986) (stating that requiring strict compliance with Rule C(6) is not an abuse of discretion); *$288,914 in United States Currency,* 722 F.Supp. at 270 ("Strict conformity, not casual compliance is the message of the case literature."). However, "a court may allow a claim to be filed out of time on a showing of excusable neglect." *United States v. Borromeo,* 945 F.2d 750, 753 (4th Cir.1991) (citation omitted). Among the factors that courts have considered in determining whether to grant an extension of time to a claimant are:

> the time at which the claimant became aware of the seizure, whether the Government encouraged the delay, the reasons proffered for the delay, whether the claimant had advised the court and the Government of his interest in defendant before the claim deadline, whether the Government would be prejudiced by allowing the late filing, the sufficiency of the answer in meeting the basic requirements of a verified claim, and whether the claimant timely petitioned for an enlargement of time.

*United States v. One (1) 1979 Mercedes 450SE,* 651 F.Supp. 351, 353 (S.D.Fla.1987) (citations omitted); *see also Borromeo,* 945 F.2d at 753 (stating similar factors considered by courts).

■ Although the Government has alleged no prejudice from Claimant's failure to conform to the procedural requirements of Supplemental Rule C(6), this court finds that the equitable considerations listed above do not favor relaxing the requirements in this case. First, there is uncontroverted evidence that Claimant became aware of the seizure of the property long before she filed her claims. Claimant's awareness of the Government's involvement with the property is apparent from her telefax message of February 25, 1994 to Assistant United States Attorney

---

4. The Government states that it was not until July 18, 1994, when Claimant's counsel provided it with a copy of the November 1993 deed, which was not recorded until December 1993, that the

Government had any evidence of Claimant's alleged ownership interest in the property. (Gov't's Mem.Supp.Mot.Summ.J. at 9 n. 7.)

Taylor Aspinwall containing information about real estate taxes due on the property. (Gov't's Mem.Supp.Mot.Summ.J. at 8.) In March and April of 1994 Claimant contacted the United States Marshal's Office and requested a key to the property and that the government pay various municipal tax and service bills. *Id.* at 8–9. As noted, the Government, in response, sent a letter to Claimant on April 22, 1994 stating that the Government had initiated a civil forfeiture action against the property and that Claimant should consult an attorney to protect any interest claimed. *Id.* at 9. Nevertheless, Claimant still waited until July 15, 1994 to file a claim. Such delay dissuades this court from finding excusable neglect. *See Lot 65 Pine Meadow,* 976 F.2d at 1157 (affirming district's court's denial of claimant's motion for an extension of time where claimant "received actual notice of the forfeiture complaint, [but] did not file his claim, answer or motion for an extension of time within the applicable time limits or offer any reason for his delay other than his other legal problems").

In consideration of the other equitable factors this court has been presented with no argument or evidence that the Government encouraged the delay.[5] *Cf. A Single Story Double Wide Trailer,* 727 F.Supp. at 153 ("A failure to file a verified claim will only be excused if an action by the government caused the non-compliance.") Claimant has given no reason for the delay in filing her claims. *See One (1) 1979 Mercedes 450SE,* 651 F.Supp. at 354 ("A final and substantial factor counseling in favor of granting the motion to strike is the utter lack of reasons for the late filing of this claim.") Claimant advised neither the court nor the Government of her interest before the claim deadline. Claimant has never filed an answer. Finally, Claimant never petitioned the court for an enlargement of time.

This court does not find sufficient mitigating factors to determine that Claimant's untimely filing of claims and failure to file an answer is the result of excusable neglect.[6] Therefore, this court will not exercise its discretion to overlook the failure to conform to the requirements of Rule C(6). *See One Dairy Farm,* 918 F.2d at 313 (finding that the district court did not abuse its discretion in dismissing appellant's claims where "[a]ppellants failed to file a claim or answer within the time prescribed by Rule C(6) and failed to advance any reason which would warrant relieving them of the consequences of their own inaction.") Thus, this court finds that Claimant is without statutory standing to contest this forfeiture action.

## C. Constitutional Standing Requirements

In forfeiture cases ownership satisfies Article III standing requirements. *Contents of Accounts,* 971 F.2d at 985 (citations omitted). Unless Claimant is the owner of the property, she has no standing to contest the forfeiture. *United States v. One 1981 Datsun 280ZX,* 563 F.Supp. 470, 474 (E.D.Pa.1983) ("In order to challenge a forfeiture, the claimant must own the *res.*") (citations omitted); *United States v. Two Hundred Eighty Thousand Five Hundred and Five Dollars,* 655 F.Supp. 1487, 1495 (S.D.Fla.1986) (same) (citation omitted). Claimant has the burden of establishing an ownership interest. *United States v. One 1987 Cadillac DeVille,* 774 F.Supp. 221, 224 (D.Del.1991) ("The burden is upon the claimant to show that his interest is sufficient to contest a forfeiture.") (citation omitted); *see also Two Hundred Eighty Thousand Five Hundred and Five Dollars,* 655 F.Supp. at 1495 (stating that the claimant has the burden of establishing that he or she has a

---

**5.** This court notes that the Government did not move to strike nor respond in any way to Claimant's claims filed in July 1994. However, since this oversight occurred after the Claimant's filing of her claims, it could not have contributed to Claimant's delay.

**6.** In addition to the aforementioned equitable factors this court has also considered the merits of Claimant's assertion of an ownership interest

in the property. Because of the long established principle that "the law abhors a forfeiture," *United States v. Lavin,* 942 F.2d 177, 182 (3d Cir. 1991) (citation omitted), this court might be inclined to excuse Claimant's failure to follow Rule C(6) had she presented a tenable argument and more substantial evidence supporting her assertion of a property interest.

sufficient interest in the seized property) (citations omitted).

 State law is applied to determine ownership interests in the context of a federal forfeiture action. *United States v. One 1973 Rolls Royce,* 43 F.3d 794, 805 n. 8 (3d Cir.1994) (citations omitted); *see also United States v. 1977 Porsche Carrera 911,* 946 F.2d 30, 34 (5th Cir.1991) (citation omitted). Because Claimant has no ownership interest in the property under Pennsylvania law, she is without standing to contest this forfeiture action.

Claimant argues that she is the owner of the property by virtue of a deed conveyed to her by Francis Lancon in November 1993 and recorded by Claimant in December 1993. (Claimant's Second Claim at 1–2 & Ex. 2.) The Pennsylvania recording statute provides that the unrecorded interest of a bona fide purchaser has priority over prior purchasers or judgment holders if the bona fide purchaser is "without actual or constructive notice." 21 Pa.Stat.Ann. § 351 (1955).[7] Because the lis pendens was filed in September 1993 and the deed was recorded in December 1993, Claimant cannot claim the protection the recording statute provides to bona fide purchasers if the lis pendens is deemed "actual or constructive notice."

By its own terms the lis pendens statute provides such constructive notice:

Real property.—Except as otherwise provided by statute or prescribed by general rule adopted pursuant to section 1722(b) (relating to enforcement and effect of orders and process), every document affecting title to or any other interest in real property which is filed and indexed in the office of the clerk of the court of common pleas of the county where the real property is situated, or in the office of the clerk of the branch of the court of common pleas embracing such county in the manner required by the laws, procedures or standards in effect at the date of such filing shall be *constructive notice* to all persons of the filing and full contents of such document.

43 Pa.Cons.Stat. § 4302(a) (1990) (emphasis added).

Furthermore, case law concerning the effect of a lis pendens on subsequent acquisitions of property is well settled. A lis pendens gives "notice to third persons that any interest they may acquire in the properties pending the litigation will be subject to the result of the action." *Dice v. Bender,* 383 Pa. 94, 117 A.2d 725, 727 (1955) (citation omitted). "The general rule is that a purchaser with notice of a prior equity in the same property must ... release legal title...." *Frankel v. Northeast Land Co.,* 391 Pa.Super. 226, 570 A.2d 1065, 1069 (1990) (citations omitted); *see also Marshall Constr. Co. v. Forsyth,* 359 Pa. 8, 57 A.2d 902, 903 (1948) (finding that a lis pendens gave a subsequent purchaser constructive notice of pending litigation for seller's specific performance of a contract of sale to another party and affirming the lower court's order of specific performance). In *Behrens v. Skelly,* 173 F.2d 715 (3d Cir.), *cert. denied,* 338 U.S. 821, 70 S.Ct. 66, 94 L.Ed. 498 (1949), the Court of Appeals for the Third Circuit, applying the general rule of privity, found that:

---

**7.** The Pennsylvania recording statute provides:

All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages. 21 Pa.Stat.Ann. § 351.

Under the rule of privity one who purchases property after a suit [had] been begun against the vendor with respect to the property purchased is 'chargeable with legal or constructive notice so as to render his purchase subject to the event of that suit' even though he may have no actual knowledge of the suit. The theory is that when a controversy regarding property has been submitted for determination by judicial proceedings those who deal with the property thereafter ought to take subject to whatever that determination may be. The property owner whose rights have been put into litigation may not deny his opponent the fruits of victory by transferring the property to another pendente lite.

*Id.* at 718–19 (citations omitted).[8]

Therefore, because the Government's filing of the notice of lis pendens gave Claimant constructive notice of the Government's interest in the property before Claimant recorded her deed, Claimant has no ownership interest in the property.

■ Claimant also contends that Francis Lancon orally conveyed the property to her in 1989 in lieu of child support owed, (Claimant's Resp.Mot.Summ.J. at 4), and offers an affidavit signed by Francis Lancon and dated July 27, 1995 wherein he states that he gave the property to Claimant on November 24, 1989 in exchange for "release from liability of child support payments." (Attach. to *id.*) Even if this alleged 1989 oral conveyance were valid,[9] this court finds support for its determination that the Claimant nevertheless has no ownership interest in the property from the treatment of "straw" or nominal owners in forfeiture cases in this and other circuits. In *United States v. Contents of Accounts,* 971 F.2d 974 (3d Cir.1992), the court noted that " 'courts have uniformly rejected standing claims put forward by nomi-

nal or straw owners. Thus, even possession of legal title to the res may be insufficient to establish standing to contest the forfeiture.' " *Id.* at 985 (citation omitted). In *United States v. One 1971 Porsche Coupe Auto.,* 364 F.Supp. 745 (E.D.Pa.1973), significant to the court's determination that the claimant was only the nominal owner of a car seized by the government was the fact that the claimant's son "had sole possession and exercised dominion and control over it." *Id.* at 748; *see also United States v. Premises Known as 526 Liscum Dr., Dayton, Montgomery County, Ohio,* 866 F.2d 213, 217 (6th Cir.1989) (finding that the claimant, "by failing to present any evidence that she was anything more than the nominal holder of legal title of [the res], did not satisfy [her burden of establishing standing] and thus, summary judgment was properly entered against her.").

In the instant case the undisputed facts reveal that Claimant did not have possession of nor exercise "dominion and control" over the property at any time. Claimant acknowledges that she was never in possession of the property. (N.T. 9/7/95 at 16). Further, although Francis Lancon's alleged conveyance of the property to Claimant in 1989 was in exchange for a release of child support liability, (Francis Lancon Aff. ¶ 3, Attach. to Claimant's Resp.Gov't's Mot.Summ.J. at 4), Claimant nevertheless filed a lien against the property in the amount of $9,164.50 in June of 1992 for a judgment on default under court-ordered child support. (Title Report, Ex. A, Gov't's Mem.Supp.Mot.Summ.J.) Also, Francis Lancon deeded Claimant the property in November 1993 only after he was brought before a domestic relations judge by the sheriff and informed he would not be released until he gave Claimant something to make up for his child support arrearages. (N.T. 9/7/95 at 9–12.) Finally, on March 6, 1995 Francis Lancon stipulated that Claimant "was not a title owner of the property

---

**8.** Although the case was decided under New York law, the court found that the same rule of privity applies in Pennsylvania. *Behrens,* 173 F.2d at 718 (citations omitted).

**9.** Transfers of interests in land implicate Pennsylvania's Statute of Frauds, which generally requires that such interests be conveyed by a deed or writing signed by the grantor. 33 Pa.Stat.

Ann. § 1 (1967). "It is well settled that the purpose of the Statute of Frauds is to prevent assertions of verbal understandings in the creation of interests or estates in land and to obviate the opportunity for fraud and perjury regarding said estates." *Knauer v. Knauer,* 323 Pa.Super. 206, 470 A.2d 553, 565 (1983) (citations omitted).

when the litigation was initiated and that she did not contribute to the purchase or maintenance of this property." (Stipulation of Settlement and Consent Judgment ¶ 8, Ex. G, Gov't's Mem.Supp.Mot.Summ.J.) Clearly the alleged oral conveyance in 1989 did little to give Claimant "dominion or control" over the property.

## CONCLUSION

Because Claimant has failed to follow the procedural requirements necessary to obtain statutory standing and has not shown that she has the requisite ownership interest in the property for Constitutional standing, this court grants the Government's Motion for Summary Judgment and dismisses Claimant's claim to the property. An appropriate order follows.

## *ORDER*

AND NOW, this 25th day of March, 1996, upon consideration of Plaintiff's Motion for Summary Judgment, Claimant's response thereto, and the evidence presented at the hearing on the Motion, it is ORDERED that the Motion is GRANTED.